UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2637-GW-SKx | Date | October 7, 2020 |
|---|---|---|---|
| Title | *Brian Whitaker v. Blackjack Clothing, Inc., et al.* | | |

Present: The Honorable GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **RULING ON PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY COURT AGAINST BLACKJACK CLOTHING, INC. [18]**


    Attached hereto is an amended version of the Court's proposed ruling on the application for default judgment and request for attorney's fees and costs. The principal amendments are the addition of footnotes 4 and 6 and concomitant text in this latest version.

:

Initials of Preparer   JG

***Brian Whitaker v. Blackjack Clothing, Inc.***; Case No. 2:20-cv-02637
Ruling on Plaintiff's Application for Default Judgment

## I.     Background[1]

Plaintiff Brian Whitaker sued defendant Blackjack Clothing, Inc. for: (1) violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.§ 12181 *et seq*.; and (2) violations of the Unruh Civil Rights Act ("Unruh Act"), California Civil Code § 51 *et seq*.  *See* Compl.  Before the Court is Whitaker's motion for default judgment against Blackjack.

Whitaker is a quadriplegic and must use a wheelchair to move around when traveling in public.  Blackjack owns Bliss, a women's clothing store located at 7420 Melrose Avenue, Los Angeles, California.  Whitaker went to the Bliss store on March 6, 2020 and found several barriers to access.  It allegedly did not have a wheelchair-accessible sales counter or wheelchair-accessible paths inside the store.

Whitaker filed this lawsuit seeking the following: (1) injunctive relief; (2) damages under the Unruh Act; and (3) reasonable attorney fees and costs.  Blackjack did not answer and the Clerk of the Court entered default against it on May 27, 2020.  *See* ECF No. 11.  The Court found that Whitaker is a "high-frequency litigant" under the Unruh Act[2] and issued an order declining to exercise supplemental jurisdiction over the Unruh Act claim.  *See* ECF No. 14.  After that order, Whitaker filed this application for default judgment.

At the previous hearing on this application, the Court issued a tentative ruling which: (1) basically granted the application but reduced the requested amount for attorney's fees by 25% because of overstaffing in this matter, (2) inquired as to Plaintiff's counsel's accusation that "Defendants have failed to conduct themselves properly during litigation and have received terminating sanctions as a penalty;" and (3) questioned the basis for Plaintiff's request for $400 for investigator's fees.  *See* Docket No. 19.  At the hearing, Plaintiff's counsel: (1) agreed to the 25% reduction as to attorney's fees; (2) admitted that the reference to Defendants' conduct was inserted in error; and (3) offered to file a supplemental brief as to the "awardability" of the costs

---

[1] The following abbreviations for the filings are used: (1) Complaint ("Compl."), ECF No. 1; (2) Plaintiff's Application for Default Judgment ("Mot."), ECF No. 18.

[2] In the one-year period prior to filing the present lawsuit, Plaintiff (while represented by his counsel herein) has filed over 675 ADA/Unruh Act cases in the United States District Court for the Central District of California alone.  He is clearly well-travelled.

of an investigator in an ADA access case. *Id*. Plaintiff has filed that supplemental brief. *See* Docket No. 20.

## II.     Legal Standard

After entry of default, a district court may at its discretion enter default judgment against the defaulting party. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one."). Several factors in deciding whether to enter default judgment include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III.    Discussion

### a. Procedural requirements

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default under Rule 55(a). Whitaker provided proof of service of the summons and complaint on Blackjack. ECF No. 9.

The Court is satisfied that the requirements of Rule 55 and Local Rule 55-1 are met: (1) the clerk entered default against Blackjack on May 27, 2020 (ECF No. 11); (2) Blackjack has not responded to the complaint; (3) Blackjack is not an infant or incompetent person; (4) Blackjack is not serving in the military and therefore the Service Members Civil Relief Act does not apply; and (5) serving Blackjack with notice of this application for default judgment is not required since it has not appeared in this action. *See* Fed. R. Civ. P. 55; C.D. Cal. L. R. 55-1.

### b. Whether default judgment should be entered against Blackjack

The Court now considers the *Eitel* factors to decide if default judgment is appropriate.

#### i. *Substantive merits, sufficiency of the claims, and possibility of dispute over material facts*

"Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of

the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). These factors essentially require that a plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (internal quotation marks and citation omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Whitaker's Title III claim is simple: the sales counter in the Bliss store was too high and the store aisles were too narrow during his visit to the store. Clearly, Whitaker is disabled and the Bliss store is a place of public accommodation. The allegation that there was no section of the sales counter 36 inches or lower above the floor is very clear-cut and unlikely to be disputed. These allegations therefore are sufficient for the Court to hold that these *Eitel* factors weigh in favor of default judgment.

      ii. *Amount at stake*

Whitaker seeks damages under the Unruh Act as well as $5,165.50 in attorney fees and costs. The Court declined to exercise supplemental jurisdiction over the Unruh Act claim, so all that is at issue here are the attorney fees and costs. Since the amount is not too large in relation to the alleged violation, this factor weights in favor of default judgment.

      iii. *The prejudice plaintiff would suffer, the policy favoring decisions on the merits, and whether the default is due to excusable neglect*

The prejudice and policy factors both weigh in favor of default judgment, as Blackjack as not appeared in this action.

  c. Attorney fees and costs

Whitaker's counsel seeks $4,335.50 in fees and $830 in costs. Mot., Exh. 1. The hourly

rates for the attorneys Mr. Potter, Mr. Handy, Ms. Seabock, and Ms. Gutierrez are $595, $595, $450, and $400, respectively. Mot. at 11. The $830 in costs consisted of $400 to pay for the investigator to visit Bliss, $400 in filing fees, and $30 in service costs. Mot., Exh. 1.

The Court finds that the quoted rates are "semi-reasonable" given the background of the lawyers.³ They are within range for lawyers with comparable experience in the Los Angeles area. *See* Wolters Kluwer/CEB, *2018 Real Rate Report: Lawyer Rates, Trends, and Analysis*, Mot., Exh. 7.

While the Court has no problem necessarily with the quoted rates, it does not understand why it took four lawyers to bring this lawsuit and to work on this motion for default judgment. Whitaker's counsel has represented him in hundreds (if not thousands) of similar suits over many years. For them, this is now a routine filing that should not require the involvement of the two-most senior partners (who in this case billed 3.3 hours of work out of a total of 8.8 hours). *Cf. Rodriguez v. Barrita, Inc.,* 53 F. Supp. 3d 1268, 1283-84 (N.D. Cal. 2014) (failure to explain the need for three attorneys to attend a mediation justified reduction of attorney's fees request). Given that situation, the Court would reduce the award of attorney fees by 25% to $3,251.25, to which the Plaintiff's counsel have indicated that they do not object.

As for costs, Plaintiff seeks $400 for his investigator, who personally visited the Bliss store on March 10, 2020 to "assess[] the location and took photos." *See* ECF No. 18-7. Plaintiff states that he "went to the Store in March 2020 with the intention to avail himself of its goods . . . ." *See* Complaint at ¶ 8. The Complaint in this matter was filed on March 20, 2020. It is unclear whether the investigator went to the store before or after Plaintiff's visit.⁴ If before, it would not appear that such "investigator fees" would be recoverable under the ADA.⁵

---

³ Mr. Potter and Mr. Handy each have been in practice working on disability issues for more than 20 years. However, as discussed below, the use of senior attorneys in this action is not justified.

⁴ The ambiguity as to the date of Plaintiff's initial visit to the store would not have arisen in state court because California's heightened pleading standard for construction-related accessibility claims require a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered or how the plaintiff was deterred and *each date* on which the plaintiff encountered each barrier or was deterred. *See* Cal. Civ. Proc. Code § 425.50(a). California law also requires plaintiffs to verify their complaints alleging construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.50(b)(1). Finally, "high frequency litigants" such as Plaintiff generally must also state in their complaint "the reason the individual was in the geographic area of the defendant's business[and] . . . the reason why the individual desired to access the defendant's business, including the specific commercial, business, personal, social, leisure, recreational, or other purpose." *See* Cal. Civ. Proc. Code § 425.50(a)(4).

⁵ This Court recognizes that 42 U.S.C. § 12205 provides for the award of reasonable attorney's fees "including litigation expenses, and costs." However, it is doubtful that § 12205 was meant to cover expenses of non-

Assuming that the investigator went to the store after Plaintiff's visit, there arises a question of the necessity of that the investigator's going to the establishment. Given Plaintiff's vast experience with non-ADA-compliant counter heights and widths of aisles in stores which the Plaintiff has encountered hundreds of time given the number of actions he has filed raising those issues,[6] one wonders why an investigator's visit was even necessary if the matter was uncontested, as it was in this case.

Further, the $400 fee appears unreasonable to the Court given the ease of the task and the fact that it is substantially higher than the investigator fees that Whitaker's counsel has requested in other cases in this district. *See, e.g.*, *Jackson v. Roscoe Real, LLC*, 20-cv-00781-CJC, 2020 WL 5289921, at *8 (C.D. Cal. May 7, 2020) (awarding $90 in investigator fees); *Langer v. Ock Sil Kim*, No. 19-cv-01626-FMO, 2020 WL 2041936, at *7 (C.D. Cal. Jan. 14, 2020) ($200 investigator fee); *Lammey v. Plaza Segundo, LLC*, No. 19-cv-04484-JAK, 2019 WL 8638804, at *9 (C.D. Cal. Dec. 20, 2019) ($100 investigator fee).

For the above reasons, the Court would decline to award investigator's fees herein.

**IV.   Conclusion**

At this point, the Court would grant a default judgment in Plaintiff's favor for injunctive relief and would award attorney's fees and costs as delineated in this ruling.

---

disabled persons looking for instances of ADA violations.

[6] This Court itself has previously handled many ADA/Unruh Act cases wherein Plaintiff has alleged access issues regarding counter heights and/or aisle widths. *See, e.g., Whitaker v. First Ventura Realty, LLC et al*; Case No. 2:19-cv-04238-GW-(SKx).